UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS SKOBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11-cr-00208-JAW |
| | ) | 1:14-cv-00352-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## <u>RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION</u>

In this action, Petitioner Nicholas Skoby moves, pursuant to 28 U.S.C. §2255, to vacate, set aside or correct his sentence.  (Motion, ECF No. 51; Attachments, ECF Nos. 51-1 to 51-5.) Petitioner pled guilty to interference with commerce by robbery, 18 U.S.C. § 1951 (Count 1); and to using, carrying, or possessing a firearm in relation to or in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A) (Count 2).  (Judgment, ECF No. 39 at 1.)  The Court sentenced Petitioner to a term of imprisonment of 57 months on Count 1 and 84 months on Count 2, to be served consecutively for a total sentence of 141 months, followed by a term of three years of supervised release on Count 1 and five years on Count 2, to be served concurrently.  (*Id.* at 2-3.)  Petitioner appealed from the sentence, challenging the 84-month consecutive sentence on Count 2 on the ground that the Court erred in finding that Petitioner brandished the weapon; the First Circuit affirmed the sentence.  *United States v. Skoby*, No. 12-1633 (1st Cir. June 4, 2013) (unpublished).

Petitioner maintains that his counsel misrepresented the possible length of the sentence (ECF Nos. 51-1 at 1, 51-5 at 1) on the firearms charge (Count 2); that counsel should have obtained a psychiatric examination to determine whether Petitioner was competent to plead guilty (ECF No. 51-4 at 3); that there was an insufficient factual basis for the plea (ECF No. 51-1 at 1); and that the plea was involuntary (ECF No. 51-4 at 2).

Petitioner also contends that his counsel failed to raise certain objections to the presentence investigation report (ECF Nos. 51-2 at 1, 51-3 at 2, 51-5 at 1); failed to object to hearsay and other statements (ECF No. 51-4 at 2-3); failed to obtain a psychiatric evaluation in preparation for sentencing (ECF No. 51-1 at 1-2), and failed to prepare Petitioner for sentencing (ECF No. 51-2 at 1).

Petitioner further argues that his confession was coerced (ECF No. 51-4 at 1); that the Court wrongly denied bail (ECF No. 51-4 at 2); that counsel failed to move to suppress evidence (ECF Nos. 51-3 at 1, 51-4 at 1-2); that the Government failed to preserve evidence (ECF No. 51-4 at 3); and that the case should not have been prosecuted in federal court (ECF No. 51-3 at 1).  Although Petitioner mentions *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the nature of his argument on the issue, if any, is unclear. (Motion at 12.)

The Government requests a summary dismissal.  (Response, ECF No. 64.)  As explained below, after review and consideration of the parties' filings and the record, the recommendation is that the Court deny Petitioner' request for relief, and dismiss Petitioner's motion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts regarding the federal charges are derived from the prosecution version, which Petitioner admitted at his plea hearing was true. (Prosecution Version, ECF No. 30; Plea Tr., ECF No. 47 at 15-16.)  On August 29, 2011, at approximately 4:39 p.m., Petitioner entered a

pharmacy engaged in interstate commerce in Millinocket, Maine. (Prosecution Version at 1.) Petitioner walked up to the pharmacy counter and presented a note that stated: "Give me ritilin + Percocet or else you die!" (*Id.*) Petitioner pulled his shirt up, displaying a pistol that he had in the waistband of his pants. (*Id.*) Petitioner was wearing a black NY Yankees baseball cap. (*Id.*) After reading the note, the pharmacist began to get the pills. (*Id.*) Petitioner told her that she had five seconds and began to count. (*Id.*) The pharmacist placed the pills she had collected in a bag and handed them to Petitioner. (*Id.*) Petitioner told the pharmacist to give him the money drawer, and she complied. (*Id.*) Petitioner took the cash from the drawer and walked out of the store with the cash and the drugs. (*Id.*) According to the pharmacy's records, Petitioner took 143 oxycodone/acetaminophen tablets and 160 tablets of methylphenidate (Ritalin). (*Id.*) He also took $586 in cash. (*Id.*) He exited the store at approximately 4:43 p.m. (*Id.*)

At approximately 5:20 p.m., law enforcement officers located, just outside Millinocket, a vehicle that matched the description that witnesses had provided of the get-away vehicle used in the robbery. (*Id.*) Petitioner was driving the vehicle. (*Id.*) When the officers attempted to stop the vehicle, the car accelerated and a chase ensued. (*Id.*) At one point, the vehicle pulled to the side of the road and Petitioner and a male passenger fled the vehicle. (*Id.*) In a search of the vehicle, officers found a black plastic gun case, a box of 9 mm bullets, the robbery note, United States currency, and some of the pills and pill bottles taken from the pharmacy. (*Id.* at 1-2.)

Law enforcement found and apprehended Petitioner a short distance from the abandoned vehicle. (*Id.* at 2.) Petitioner was carrying $495 and a 9mm High Point pistol. (*Id.*) He was wearing a black NY Yankees baseball cap. (*Id.*)

An officer met with Petitioner and administered the *Miranda* warnings.[1]  (*Id*.)  Petitioner agreed to speak with the officer and told the officer that he had presented a note to the pharmacy that said something like "give me the pills or else."  (*Id*.)  Petitioner also reported that he demanded money and that the pharmacist gave him pills and money.  (*Id*.)  Petitioner told the officer that he had a gun, which he had purchased at the Belfast Trading Post, but that he had not threatened anyone with it.  (*Id*.)  Records show that Petitioner purchased a 9 mm High Point pistol bearing the same serial number as the one found on Petitioner, and a box of 9 mm ammunition, at a federally licensed firearms dealer in Northport, Maine, on August 26, 2011. (*Id*.)  The pistol was manufactured outside Maine.  (*Id*.)  The clerk who sold it to Petitioner recalled that the purchaser was wearing a dark NY Yankees baseball cap at the time of the sale.  (*Id*.)

Petitioner was indicted in November 2011.  (Indictment, ECF No. 9.)  He pled guilty in February 2012 following a hearing conducted pursuant to Fed. R. Crim. P. 11.  (Plea Tr. at 1, 20.) Petitioner entered the plea without a plea agreement.  (Plea Tr. at 16-17.)

Petitioner was sentenced in May 2012.  (Sentencing Tr., ECF No. 48 at 1, 35-36.)  The Court calculated the guidelines sentence as follows: the base offense level was 20.  (*Id.* at 26.)  The Court added one level, resulting in a total offense level of 21, because the object of the robbery was to obtain a controlled substance.  (*Id.*)  Petitioner's criminal history category was III, which, together with the total offense level of 21, yielded an applicable guidelines range of 46 to 57 months.  (*Id.* at 26-27.)  On Count 2, the Court found that Petitioner brandished the firearm and concluded, therefore, that a mandatory seven-year consecutive term of imprisonment must be imposed, pursuant to 18 U.S.C. §924(c)(1)(A).  (*Id.* at 28, 32.)

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Court then discussed the sentencing factors, pursuant to 18 U.S.C. §3553(a), noting that "[t]he most striking part of the defendant's history . . . is his mental health diagnoses and his drug use."  (*Id.* at 27-29.)  Among other things, the Court found that

> [t]he defendant has a long and extensive history of illegal drug use, including marijuana, cocaine, crack cocaine, and bath salts.  He's also abused alcohol and prescriptive medication.  On the day of the robbery itself, the defendant had used marijuana, alcohol, crack cocaine, and bath salts before he went into [the pharmacy].

(*Id.* at 29.)  The Court made a number of findings, including Petitioner's "two prior theft convictions, an OUI conviction, and a forgery conviction."  (*Id.*)  In addition, the Court found that while Petitioner was in jail, before he pled guilty, he "wrote three letters to his girlfriend asking her to smuggle Suboxone strips into the Penobscot County Jail."  (*Id.* at 31.)[2]  The Court noted additional compounding factors, including that the robbery was of a pharmacy for drugs and cash; that Petitioner carried and showed a gun during the robbery; that the gun was loaded and had a bullet in the chamber; that Petitioner counted down while waiting for the pills, and thereby implicitly threatened to shoot the victim; that Petitioner was intoxicated with a mixture of alcohol, cocaine, bath salts, and marijuana; that Petitioner led police on a high-speed car chase; that Petitioner fled into the woods, attempting to hide; and that Petitioner, before he was apprehended, snorted some of the drugs that he stole.  (*Id.* at 31-32.)

Petitioner appealed from the mandatory consecutive 84-month sentence on Count 2, arguing that (1) within the framework of 18 U.S.C. §924(c), the meaning of "use" and "brandish" is ambiguous, and the rule of lenity requires that ambiguity in sentencing statutes be construed in favor of the defendant; and (2) the evidence was insufficient to support the District Court's finding

---

[2] The Court noted that Petitioner "attempted to co-opt his girlfriend to try and smuggle Suboxone into jail" sometime between August 2011 and January 2012.  (Sentencing Tr., ECF No. 48 at 32.)  The presentence investigation report states that Petitioner was discovered with the contraband after a contact visit with his girlfriend.

that Petitioner brandished a firearm within the meaning of section 924(c)(4).   (Petitioner's Appellate Brief at 2.)   On June 4, 2013, the First Circuit affirmed the sentence, "focusing specifically on the imposition of a seven-year consecutive sentence under 18 U.S.C. § 924(c)(1)(A) for 'brandish[ing]' a firearm during a robbery."[3]   *Skoby*, No. 12-1633.   (ECF No. 49.)   Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.

Petitioner signed his section 2255 motion on September 2, 2014, and it was filed on September 5, 2014.   (Motion at 13.)   The Government concedes that Petitioner filed his section 2255 motion timely.   (Response at 2.)

## II.   DISCUSSION

### A.  Legal Standard

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).[4]  Here, to the extent that Petitioner alleges ineffective assistance of counsel, his right to counsel is

---

[3] Title 28 U.S.C. § 924(c)(4) states:

> For purposes of this subsection, the term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

[4] Title 28 U.S.C. § 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

guaranteed by the Sixth Amendment, and therefore Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). The Court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 622 (1998) (citations omitted).

On a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). The "cause" test is "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'" *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38

F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).

In reviewing claims of ineffective assistance of counsel, courts should be mindful that "'[c]ounsel is not required to waste the court's time with futile or frivolous motions.'" *United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)); *see Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

A district court that reviews claims of ineffective assistance of counsel is not required to address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954).

**B. Grounds Asserted and Analysis**

### 1. Claim of ineffective assistance of counsel based on alleged misrepresentations regarding the possible length of the sentence

Petitioner claims that counsel was ineffective because counsel misrepresented the length of the sentence. Specifically, he alleges that counsel told him that if he pled guilty to both counts, he would receive a reduction at sentencing for acceptance of responsibility, pursuant to U.S.S.G.

§3E1.1, and he "would only receive a couple of years." (ECF No. 51-1 at 1.) Petitioner asserts that counsel did not explain the significance to his sentence of a finding that he brandished the weapon, as distinguished from a finding that he used or carried the weapon, as alleged in the indictment. (*Id.*) He maintains that as a result of the Court's colloquy, he thought he would not receive more than four years in prison. (ECF No. 51-5 at 1.) Petitioner contends that if counsel had explained the possible sentence fully, he would have pled guilty to the robbery charge, but he would have gone to trial on the firearms charge and received a shorter sentence. (*Id.* at 1-2.)

A review of the record reveals that Petitioner cannot demonstrate prejudice, even if one assumes that Petitioner could prove that counsel provided inaccurate information.[5] First, Petitioner told the Court, in response to the Court's questions in the plea colloquy, that no one had made any promise to him regarding the sentence. (Plea Tr., ECF No. 47 at 18-19.) "[T]he presumption of truthfulness of the [Fed. R. Crim. P. 11 colloquy] statements will not be overcome unless the allegations in the § 2255 motion . . . include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984). Petitioner has offered no reason for the Court to question the truthfulness of the statement that he made in the colloquy. As the Tenth Circuit has recognized, the lack of any promises or guarantees about a petitioner's sentence is a factor in determining whether there was prejudice as a result of the petitioner's mistaken belief that he would be eligible for a sentence reduction. *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) ("We have held that an erroneous sentencing prediction is not prejudicial where the court has conducted an adequate Rule 11 colloquy.")

---

[5] The fact that the misrepresentations are assumed for purposes of this discussion shall not be construed to suggest that the record supports the conclusion that counsel provided inaccurate information.

Second, according to the First Circuit, "[a]n attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test." *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997)); *see also United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) (holding that an inaccurate sentencing prediction by counsel, standing alone, does not satisfy either prong of the *Strickland* analysis).

Third, the Court's thorough colloquy was more than sufficient to correct any misunderstanding that Petitioner might have had as the result of counsel's advice about the length of the sentence. (Plea Tr. at 9-11.)  Regarding the mandatory consecutive seven-year sentence, the Court stated:

> THE COURT:  . . . [I]f you only carried the gun, you're subject to, in addition to the penalties set forth in Court 1, a mandatory minimum additional term of five years, and you could be subject to being placed in jail for the rest of your life. . . .  Do you understand that these are the penalties, including a mandatory consecutive, which means added on to?  It basically means, Mr. Skoby, that once I figure out what the appropriate sentence is for Count 1 and I fix that sentence, then I must add at least five years to your sentence under Count 2.  Do you understand that if you only carried the firearm, that you're subject to the – those additional penalties?

> THE DEFENDANT:  Yes, I am, Your Honor.

> THE COURT:  Now, I want you to listen carefully again because the penalty is different if you brandished the firearm.  If you brandished the firearm, in addition to the penalty in Count 1 which I've just described, you're subject to an additional mandatory consecutive prison term of at least seven years, and, again, you could be in jail for the rest of your life on Count 2 alone. . . .  In other words, if you brandished the firearm, again, I figure out what the penalty should be for the robbery itself, and then I must, if I find that you brandished the firearm, add seven years at least, and I could add an amount of time that would place you in prison for the rest of your life.  Do you understand that these are the minimum and maximum penalties that may be imposed in the event you brandished the firearm?

> THE DEFENDANT:  Yes, I do, Your Honor.

(*Id.*)

Fourth, given the Court's unequivocal statements to Petitioner about the possibility of a mandatory seven-year consecutive term on Count 2, Petitioner's claim that he believed his sentence would not be longer than four years lacks credibility. *David*, 134 F.3d at 478 (holding that a petitioner's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible") (quotation marks omitted). Petitioner's statement that he thought he would receive a reduction for acceptance of responsibility also lacks credibility, given that sometime between August 2011 and January 2012, *i.e.*, in the months before the plea hearing, Petitioner committed additional criminal conduct by smuggling Suboxone into jail.

> **2. Claim of ineffective assistance of counsel regarding failure to obtain a psychiatric evaluation to determine whether Petitioner was competent to plead guilty**

Petitioner claims that counsel was ineffective because he failed to ensure that Petitioner obtained a psychiatric evaluation to determine whether he was competent to plead guilty.  (ECF No. 51-4 at 3.)  Petitioner alleges that he was not properly medicated while he was in jail.  (*Id.*)

Petitioner's allegation about his medication in jail contravenes his statements in the plea colloquy, in which Petitioner, in response to the Court's questions, told the Court that he had been prescribed medications by a psychiatrist prior to being incarcerated and that he had taken all of his prescribed medications in their regular doses in the 24 hours before the plea hearing.  (Plea Tr. at 3.)  He also told the Court that he had not taken any other drugs or intoxicants in the last 24 hours, and that he understood the proceedings.  (*Id.* at 3-4.)  The Court found that Petitioner did not appear to be under the influence of any medicine, drug, or other substance that may affect his judgment. (*Id.* at 4.)  Petitioner presents no "credible, valid reasons" why the Court should not presume the truthfulness of his statements in the plea hearing about his medications. *See Butt*, 731 F.2d at 80.

11

In addition, none of Petitioner's other responses to the Court's inquiries suggests any basis for concern about Petitioner's competency to proceed with the plea.  To the contrary, Petitioner consistently demonstrated an understanding of the proceeding, and an appreciation for the significance of the plea.

Particularly given Petitioner's own statements and presentation during the proceeding, the record lacks any objective evidence to support Petitioner's claim that a psychiatric evaluation to assess his competence to plead guilty was warranted.  Counsel, therefore, was not deficient for not requesting an evaluation, nor was Petitioner prejudiced by the decision not to request an evaluation.

### 3. Claim of insufficient factual basis for the plea and associated claim of ineffective assistance of counsel

Petitioner claims that there was an insufficient factual basis for his guilty plea.  (ECF No. 51-1 at 1.)  In particular, Petitioner alleges that he told counsel: "I didn't think I had a gun on me during [the robbery] . . . ." (*Id.*)  He asserts: "There was only the pharmacist saying she saw a gun. In [the] video you cannot tell if [there] is a gun.  There is [not] sufficient evidence that I brandished [a] gun in [the] robbery." (*Id.* at 2.)  Petitioner also contends that counsel failed to investigate the matter.  (*Id.*)[6]

The Court relied on the prosecution version of the crimes to determine whether there was a factual basis for the plea.  (Plea Tr. at 14.)  Counsel represented that he reviewed the prosecution version "numerous times" with Petitioner, that counsel was satisfied that the Government could produce the evidence set forth in the prosecution version, and that the admissible evidence would permit a properly instructed jury to find Petitioner guilty beyond a reasonable doubt.  (*Id.* at 14-

---

[6] *See* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."); *McCarthy v. United States*, 394 U.S. 459, 467 (1969).

15.)  Petitioner told the Court that he had had an opportunity to review the prosecution version, that he understood its significance, and that he did not disagree with anything set forth in the prosecution version.  (*Id.* at 15-16.)  Petitioner also advised the Court that the prosecution version was true to his personal knowledge.  (*Id.* at 16.)  On the basis of the prosecution version, counsel's responses, and Petitioner's responses, the Court found a factual basis for Petitioner's guilty plea. (*Id.*)

According to the prosecution version, Petitioner pulled up his shirt and displayed a pistol in the waistband of his pants.  (Prosecution Version at 1.)  Counsel represented at the plea hearing that in addition to the prosecution version, the Government's evidence included a video of the crime, the statements of two witnesses, and Petitioner's post-*Miranda* confession.  (Plea Tr. at 19.)

Petitioner's section 2255 allegation that he did not believe he had a gun on his person when he committed the robbery directly contradicts his admission, through the plea colloquy, which included his acceptance of the prosecution version, that he displayed a pistol during the robbery. Petitioner presents no "credible, valid reasons" why the Court should not presume the truthfulness of his statements in the plea hearing regarding Petitioner's belief that the prosecution version was true to his personal knowledge.  *See Butt*, 731 F.2d at 80.  Petitioner's claim that a factual basis for the plea was lacking and his related claim of ineffective assistance of counsel are unsupported by the record.

### 4.  Claim that the plea was involuntary

Petitioner argues that his plea was involuntary.  (ECF No. 51-4 at 2.)  He asserts that he pled guilty "without understanding the charges," and "without fully understanding the consequences of the guilty plea."  (*Id.*)  Petitioner maintains that language difficulties impeded his ability to understand the charges.  (*Id.*)

The Court explained to Petitioner at the beginning of the plea hearing that the purpose of the hearing was for the Court to determine whether Petitioner entered his plea knowingly and voluntarily. (Plea Tr. at 2.) In response to the Court's questions, Petitioner told the Court that he had had almost one year in college. (*Id.*) After asking several questions regarding Petitioner's medications, the Court asked Petitioner: "Do you believe you understand what's happening in these proceedings?" (*Id.* at 4.) Petitioner answered: "Yes, I do, Your Honor." (*Id.*) The Court found Petitioner to be competent to enter a plea, and then asked: "Has [counsel] explained to you the consequences that may flow from these proceedings?" (*Id.*) Petitioner answered: "Yes, he has, Your Honor." (*Id.*) In response to further questions by the Court, Petitioner told the Court that counsel had informed him of the elements and the nature of the charged offenses and the penalties that may be imposed. (*Id.* at 6.) Counsel told the Court that he was satisfied that Petitioner understood the charges and penalties. (*Id.*) Subsequently, as the Court reviewed the elements of each of the charged crimes and the facts that pertain to each of the charges, Petitioner told the Court that he understood them. (*Id.* at 7-8.)[7]

---

[7] Regarding the robbery count (Count 1), the Court told Petitioner:

> [The indictment] alleges that on or about August 29, 2011, in the District of Maine, which means the state of Maine, you obstructed, delayed, and affected commerce and the movement of articles in commerce by robbery. Specifically, you took the personal property . . . namely, United States currency and controlled substances, that belonged to [the pharmacy] in Millinocket, Maine. It alleges that [the pharmacy] is a business that was engaged in interstate commerce and an industry that affects interstate commerce. It alleges that you took the controlled substances and currency from [pharmacy] employees against their will by . . . using actual and threatened force, violence, and fear of immediate and future injury to the employees. It alleges that at the time you took the currency and controlled substances, you were armed with a handgun and that you thus violated federal criminal law.

(Plea Tr., ECF No. 47 at 7.) Regarding the firearms count (Count 2), the Court told Petitioner:

> Count 2 alleges use, carrying, or possession of a firearm during and in relation to and in furtherance of a crime of violence. It says that on [or] about August 29, 2011, in the District of Maine, you knowingly used and carried a firearm, that is, a 9 millimeter Hi-Point handgun, during and in relation to a crime of violence . . . for which you may be prosecuted in a court of the United States, namely the offense I already described, the robbery, and that you knowingly possessed that firearm in furtherance of the offense described in Count 1, again, the robbery.

After explaining the penalties and receiving Petitioner's assurance that he understood them, the Court asked Petitioner if he understood that the law did not require him to plead guilty, and Petitioner could decide not to plead guilty up until the time the Court accepted the guilty plea. (*Id.* at 11-12.) The Court then reviewed Petitioner's jury trial rights and other attendant rights that Petitioner would waive if he pled guilty. (*Id.* at 12.) Petitioner told the Court that he understood each of these rights. (*Id.* at 12-13.) After the Court determined that there was a factual basis for the plea, in response to further questioning, Petitioner told the Court that no one had threatened him or coerced him into pleading guilty. (*Id.* at 16.)

Petitioner told the Court that he understood that the Court had the authority to determine an appropriate sentence, that the Court was not required to accept the sentencing recommendations of the parties, and that Petitioner would not have the right to withdraw his guilty plea at sentencing. (*Id.* at 17.) After the Court explained to Petitioner that the sentencing guidelines were advisory and that Petitioner would be sentenced in accordance with certain factors set forth in federal criminal law, the Court asked Petitioner if he had discussed with counsel how the issues might affect his sentence. Petitioner confirmed that he had discussed the issues with counsel. (*Id.*)

As part of the plea proceeding, the Court also explained that the Probation Office would prepare a presentence investigation report to be used to determine an advisory sentencing range, that Petitioner would have the opportunity to challenge facts in the report, and that the Court had the authority to impose a more or less severe sentence than called for by the sentencing guidelines. (*Id.* at 17-18.) Petitioner informed the Court that he understood the process, and that he would not be permitted to withdraw his plea in the event that the Court's sentence was more severe than the

---

(Plea Tr. at 7-8.)

guidelines sentence would have been.  (*Id.* at 18.)  Petitioner told the Court that he understood that he would be required to serve all of the term of imprisonment except for good-time deductions, and that he would not be permitted to serve any part of it on parole.  (*Id.*)  Finally, Petitioner advised the Court that no one made any promises to him in an effort to persuade him to plead guilty, nor did anyone promise him anything about what the Government would recommend or what the sentence would be.  (*Id.* at 18-19.)

The extensive colloquy between Petitioner and the Court lacks any suggestion that Petitioner's plea was in any way involuntary.  That is, Petitioner has presented no "credible, valid reasons" for the Court not to presume the truthfulness of Petitioner's statements that he understood the charges and that he entered his plea knowingly and voluntarily.  *See Butt*, 731 F.2d at 80.

### 5.  Claim of ineffective assistance of counsel regarding failure to raise objections to the presentence investigation report

Petitioner claims that counsel was ineffective because he failed to raise certain objections to the revised presentence investigation report.[8]  (ECF Nos. 51-2 at 1, 51-3 at 2, 51-5 at 1.)  More particularly, he alleges that counsel failed to object at sentencing to the victim's statement: "[He] told me I was going to die over and over again and counted down the seconds."  (ECF Nos. 51-2 at 1, 51-3 at 1; Sentencing Tr. at 11.)  Petitioner also contends that counsel failed to object to statements that Petitioner planned the robbery, that he admitted to having violence on his mind, that he intentionally lifted his shirt to show his gun to the pharmacist, that he threatened the pharmacist, that he robbed the pharmacy to get pills to use to buy other drugs, that he had a bullet

---

[8] Petitioner raised three objections to the revised presentence investigation report.  (Sentencing Tr. at 3-10.)  First, in response to a statement in the report about a prior theft conviction and probation revocation, Petitioner objected to language that referred to a robbery involving a firearm.  At sentencing, the Court struck the language.  (*Id.* at 6.)  Second, Petitioner objected to a reference that he had been affiliated with a gang, and the Court struck the language. (*Id.* at 7-8.)  Petitioner withdrew his third objection, which pertained to a paragraph in the report stating that Petitioner "went to the pharmacy to get pills for money to buy other drugs."  (*Id.* at 9-10.)  Petitioner told the Court that he did not deny heavy use of alcohol and use of marijuana, cocaine, crack cocaine, and bath salts.  When the Court then asked whether Petitioner had any other objections to the report, Petitioner responded that he did not.  (*Id.* at 10.)

in his gun, and that he brandished the gun.  (ECF No. 51-2 at 1.)  Petitioner argues that the statements in the presentence investigation report about his use of pain medications and bath salts were inaccurate.  (ECF No. 51-3 at 2.)  Petitioner maintains that counsel should have "objected to the change in Count 2 in the second PSI report and the unfactual statements" about him.  (ECF No. 51-5 at 1.)[9]

Although the revised presentence investigation report does not state directly that Petitioner admitted that he had violence on his mind at the time of the robbery, the Government made a statement to that effect at sentencing.  (Sentencing Tr. at 15.)  Regardless of whether Petitioner intended to assert a claim of prosecutorial misconduct or a claim of ineffective assistance of counsel, Petitioner's claim fails.  Petitioner admitted the truth of the prosecution version, which states that Petitioner walked up to the pharmacy counter and presented a note that stated: "Give me ritilin + Percocet or else you die!"  (Prosecution Version at 1; Plea Tr. at 16.)  By admitting the truth of the prosecution version, Petitioner in essence conceded that he planned to commit the crime with a threat of violence.  Petitioner's argument, therefore, that the assertion that he had violence on his mind was inaccurate or unwarranted under the circumstances is without merit.

Similarly, Petitioner's contention that his counsel's performance was substandard because he did not object to the recitation of the other facts, including facts relevant to Count 2, is unavailing.  The prosecution version, which Petitioner adopted at sentencing, asserts that Petitioner pulled his shirt up, and displayed a pistol he had in the waistband of his pants.  (Prosecution Version at 1.)  Petitioner thus admitted to displaying the weapon.  Under the circumstances, counsel had no factual basis upon which to object to the report's statement that Petitioner was subject to a seven-year consecutive term on Count 2.  Counsel, therefore, did not perform

---

[9] The Government correctly points out that to the extent Petitioner asserts any underlying claim that the Probation Office misstated facts in the presentence investigation report, that claim is procedurally defaulted.  (Response at 37.)

ineffectively regarding the report's recommended consecutive sentence.  Furthermore, Petitioner was not prejudiced insofar as the First Circuit upheld the Court's finding that Petitioner brandished the weapon.  *Skoby*, No. 12-1633.

Finally, Petitioner provides no factual basis on which counsel could have objected to either the statement in the presentence investigation report or to the sentencing finding that the gun "was loaded and had a bullet in the chamber."  (Sentencing Tr. at 32.)  Consequently, Petitioner cannot prevail on his contention that his counsel was ineffective.

### 6.  Claim of ineffective assistance of counsel regarding failure to object to hearsay statements

Petitioner claims that counsel was ineffective because he failed to object to hearsay and other statements by witnesses; Petitioner argues that his Sixth Amendment right to confront witnesses against him was violated.  (ECF No. 51-4 at 2-3.)  As the Government points out, any Sixth Amendment claim regarding Petitioner's confrontation rights is procedurally defaulted. (Response at 44.)

Petitioner does not specify which statements are the subject of this claim, and, therefore, the claim fails for vagueness.  *David*, 134 F.3d at 478 (vague allegations do not entitle a habeas petitioner to an evidentiary hearing).  In addition, regardless of whether Petitioner refers to statements relevant to the plea hearing or statements at sentencing, the claim lacks merit.  In the colloquy with the Court during the plea proceeding, Petitioner acknowledged that in entering the plea, he was waiving his right to cross examine witnesses at trial.  (Plea Tr. at 12-13.)  The Court's finding that Petitioner knowingly and voluntarily waived his trial rights which, as the Court had previously explained to Petitioner, included his right to cross-examine the Government's witnesses, is sound and clearly supported by the record.  (*Id.* at 12-13, 20.)

As to statements made at sentencing, the First Circuit has held that "[r]eliable hearsay is, of course, admissible during sentencing proceedings." *United States v. Ramírez-Negrón*, 751 F.3d 42, 52 (1st Cir. 2014). Petitioner makes no argument that any statement admitted at sentencing is unreliable. Furthermore, a defendant has no Sixth Amendment right to confront witnesses at sentencing. *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir. 2005).

### 7. Claim of ineffective assistance of counsel regarding failure to obtain a psychiatric evaluation for sentencing purposes

Petitioner claims ineffective assistance of counsel based on counsel's failure to obtain a psychiatric evaluation of Petitioner for sentencing purposes. (ECF Nos. 51-1 at 1-2, 51-3 at 2.) He alleges that the psychiatric evaluation would have shown that he was not in his right mind when he committed the robbery.[10] (ECF Nos. 51-1 at 2, 51-3 at 2.)

The record evidence does not support a conclusion that Petitioner was unable to appreciate the wrongfulness of his acts. In fact, the record plainly supports the determination that he understood the wrongfulness of his conduct. He purchased a gun three days before the robbery, he prepared a demand note to present at the pharmacy counter, he told the pharmacist that she had five seconds and began to count, he told the pharmacist to give him the cash drawer, he took the cash from the drawer, he drove the get-away vehicle, he led police on a chase, he stopped the vehicle, and he tried to flee. (Prosecution Version at 1-2.) Petitioner's actions are calculating and,

---

[10] The insanity defense statute provides:

> **(a) Affirmative defense.** It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

> **(b) Burden of proof.** The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C. § 17.

particularly his attempts to avoid apprehension, reflect that he was aware of the wrongfulness of his conduct.  Because the record does not support a finding that Petitioner failed to appreciate the wrongfulness of his acts, counsel was not ineffective for failing to obtain a psychiatric report regarding Petitioner's substance abuse problem or his mental health history.  "[C]ounsel's performance was not deficient if he declined to pursue a futile tactic." *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) (applying *Strickland* standard to a habeas claim under 28 U.S.C. § 2254).

### 8. Claim of ineffective assistance of counsel regarding failure to prepare for sentencing

Petitioner claims that counsel was ineffective because he failed to prepare Petitioner for sentencing.  (ECF No. 51-2 at 1.)  Petitioner also alleges that counsel was unprepared to discuss Petitioner's life, his mental health history, and his substance abuse history.[11]  (ECF No. 51-3 at 2.) Specifically, Petitioner argues that counsel misrepresented to the Court that Petitioner committed the crimes due to his addiction to Oxycontin and bath salts, when in fact, Petitioner alleges, he did not use pain medications and had not used bath salts before the day he committed the offenses. (*Id.*)  He maintains that had counsel explained the role of Petitioner's use of bath salts and the fact that he had not been on his prescribed medications, the Court might have been more lenient.  (*Id.*)

Petitioner's section 2255 allegations are inconsistent with his statements at sentencing.  At sentencing, Petitioner told the Court, in response to the Court's questions, that he had gone over the presentence investigation report with counsel and that he understood the report.  (Sentencing Tr. at 4.)  After the Court went through each of Petitioner's objections to the report, the Court asked Petitioner if he had any additional objections, and Petitioner replied that he did not. (Sentencing Tr. at 10.)  Significantly, Petitioner did not object at sentencing to the statement in the

---

[11] Although Petitioner alleges that counsel failed to raise important points about Petitioner's life history and his mental health history, Petitioner's specific allegations relate to counsel's presentation of Petitioner's drug abuse history rather than other aspects of his personal history.  (ECF No. 51-3 at 2.)

report that he "admitted to experimenting with 'monkey dust' or 'bath salts' on the day of his arrest," or that he abused prescription pain medications.  When the Court specifically asked whether Petitioner used "a whole host of drugs," including marijuana, heavy use of alcohol, cocaine, crack cocaine, and bath salts, Petitioner affirmed that he had.  (Sentencing Tr. at 9-10.)

Counsel's approach at sentencing was to emphasize that Petitioner had a drug abuse problem when the offense occurred.  Counsel attempted to persuade the Court that by the time of sentencing Petitioner, was "not the same person."  (*Id.* at 17.)  The Court was unpersuaded, however, because Petitioner had tried to smuggle Suboxone into jail after he had been incarcerated for about four months.  (*Id.* at 18, 32.)  Counsel's strategy and presentation were not deficient; the drug abuse issue was central to the presentation at sentencing, but unfortunately for Petitioner, his effort to smuggle drugs into jail undermined counsel's argument.  Counsel's approach, however, was not unreasonable under the circumstances.

Additionally, Petitioner was not prejudiced by counsel's approach to Petitioner's drug abuse history; regardless of whether Petitioner took bath salts for the first time on the day of the offense, Petitioner does not dispute that he has a long history of drug abuse, and that he was intoxicated with alcohol and a number of drugs, including bath salts, when he committed the crime. Petitioner's drug use, therefore, was necessarily an issue for the Court's consideration at sentencing. The record reflects that the Court gave careful consideration to Petitioner's life history, his mental health history, and his drug abuse history in the sentencing process.  (*Id.* at 9, 17-18, 28-29, 31-32.)  In other words, Petitioner's drug use would have been an important issue at sentencing regardless of his counsel's approach.

### 9.   Claim that counsel failed to move to suppress an alleged coerced confession or other evidence

Petitioner claims that counsel was ineffective because he failed to move to suppress evidence of an allegedly coerced confession or other evidence.  (ECF Nos. 51-3 at 1, 51-4 at 1-2.)  Regarding the confession, Petitioner alleges that law enforcement officers told him that he would "physically get hurt again" if he did not confess.  (ECF No. 51-4 at 1.)  The Government argues, correctly, that Petitioner's claim of a coerced confession is procedurally defaulted.  (Response at 26-27.)

Even if the Court were to consider the merit of Petitioner's contention, Petitioner cannot demonstrate either cause or prejudice because the record does not support the underlying claim of coercion.  Although Petitioner now alleges that he was coerced into confessing, all of the record evidence, including Petitioner's own statements in the plea hearing, is inconsistent with the suggestion that a motion to suppress the confession on the basis that it was coerced had any factual basis.  The Court asked Petitioner whether the prosecution version, which includes reference to a post-*Miranda* confession, was accurate and whether he disagreed with anything stated in the prosecution version.  (Prosecution Version at 2; Plea Tr. at 15-16.)  Petitioner responded that the prosecution version was accurate, and that he did not disagree with anything in it.  (Plea Tr. at 15-16.)  Petitioner's claim of a coerced statement thus lacks any support on the record. [12]

---

[12] Petitioner makes a general allegation that "counsel never suppressed any evidence," but it does not appear that Petitioner intends to make the argument that counsel should have moved to suppress evidence on Fourth Amendment grounds.  (ECF No. 51-3 at 1.)  Petitioner alleges that witnesses made untrue statements, there was no bullet in the gun, he did not count down or repeat his death threat to the pharmacist, he did not plan the robbery, and he did not rob the pharmacy to obtain drugs in order to buy other drugs.  (*Id.*)  By pleading guilty, Petitioner waived any Fourth Amendment claim; the Court explained to Petitioner in the plea hearing that one of the trial rights that he would be waiving if he pled guilty was the opportunity to object to the Government's evidence.  (Plea Tr. at 13.)  Any free-standing Fourth Amendment claim is therefore procedurally defaulted, but regardless of that, none of these allegations give rise to any Fourth Amendment issues in the context of this case.

**10. Claim that the Court wrongly denied bail**

Petitioner claims that the Court wrongly denied bail.  (ECF No. 51-4 at 2.)  Claims relating to pre-trial bail are not cognizable under section 2255.  *See Lynn v. United States*, 365 F.3d 1225, 1233 (11th Cir. 2004) (noting that "claims of excessive bail are not cognizable in a section 2255 action") (quotation marks omitted).[13]

**11. Claim that the Government failed to provide or preserve evidence**

Petitioner contends that the Government failed to provide or preserve evidence favorable to Petitioner.  (ECF No. 51-4 at 3.)  Petitioner specifically argues that an audio or video of the confession and a video of the high-speed chase exist, and that the items were either not provided or not preserved.  (*Id.*)

The Government represents that no audio or video recording of Petitioner's confession was generated, and the Government is not aware of whether Petitioner's high-speed chase after the robbery was videotaped.  (Response at 44-45.)  Petitioner has cited no facts to support his contention.  The record thus lacks any evidence upon which the Court could conclude that the Government either withheld or did not preserve any evidence that might have been favorable to Petitioner.  Petitioner's claim, therefore, that the Government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), lacks merit.[14]

---

[13] Furthermore, as the Government points out, the issue is procedurally defaulted in any event because Petitioner waived it when, in November 2011, he knowingly and voluntarily waived his right to a detention hearing and consented to being detained in federal custody pending trial.  (Response, ECF No. 64 at 43-44; Conditional Order of Detention Pending Trial, ECF No. 22.)  At that time, the Court ordered Petitioner to be federally detained once the State of Maine released him from state charges and he entered into federal custody.  (*Id.*)  In February and May 2012, Petitioner was only temporarily brought into federal custody for his change-of-plea hearing and sentencing, respectively; otherwise, he was in state custody at that time.  (Writs of Habeas Corpus, ECF Nos. 29, 36.)

[14] The Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  The First Circuit has held that "[t]o establish a *Brady* violation, 'a defendant must make three showings. The evidence at issue (whether exculpatory or impeaching) must be favorable to the accused; that evidence must have been either willfully or inadvertently

### 12. Claim that the case should not have been prosecuted in federal court

Petitioner argues that his case should not have been prosecuted in federal court; he states, "I still don't know why my case out of 20 or so other pharmacy robberies went federal." (ECF No. 51-3 at 1.)

"Congress and the Constitution have given the Executive Branch some prosecutorial discretion as to when to prosecute. No such discretion is given to the Judicial Branch to invalidate convictions on the basis of whether or not there have been few prosecutions on similar facts in the past." *United States v. Cortés-Cabán*, 691 F.3d 1, 22-23 (1st Cir. 2012). "Although the exercise of prosecutorial discretion is subject to the constitutional guarantee of equal protection and 'may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' the prosecutor is entitled to a threshold presumption that he acted in good faith for reasons of sound governmental policy." *United States v. Gary*, 74 F.3d 304, 313 (1st Cir. 1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)) (quotation marks and citations omitted).

In this case, Petitioner does not claim that the exercise of prosecutorial discretion to prosecute him violates any law, and the record is devoid of any evidence that the prosecution was conducted in bad faith. Petitioner's claim thus is not cognizable in a section 2255 action. *See* 28 U.S.C. § 2255(a) (requiring that the claim assert that the prisoner is in custody under a sentence imposed "in violation of the Constitution or laws of the United States"). Furthermore, Petitioner waived the claim, *see Gary*, 74 F.3d at 313, and it is procedurally defaulted.

---

suppressed by the government; and prejudice must have ensued.'" *United States v. Alverio–Meléndez,* 640 F.3d 412, 424 (1st Cir.2011) (quoting *United States v. Mathur,* 624 F.3d 498, 503 (1st Cir.2010)) (quotation marks omitted).

### 13. Claim based on *Alleyne v. United States*

Petitioner states: "I was waiting to see if [*Alleyne*] became retroactive." (Motion at 12.) The First Circuit has held that "the rule announced in *Alleyne* is not retroactively applicable to sentences on collateral review on an initial habeas petition." *Butterworth v. United States*, 775 F.3d 459, 468 (1st Cir. 2015). Thus, Petitioner could not have had the benefit of *Alleyne* had it applied to this case.[15]

## III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. The recommendation is that the Court deny Petitioner's section 2255 motion, and deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served

---

[15] In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Supreme Court held that "any fact that increases the mandatory *minimum* [sentence] is an 'element' that must be submitted to the jury." 133 S.Ct. at 2155 (emphasis added). The holding in *Alleyne* is recognized as an extension of the Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As the plurality explained in *Alleyne*, the Supreme Court held in *Apprendi* that "any fact that increased the prescribed statutory *maximum* sentence must be an 'element' of the offense to be found by the jury." *Alleyne*, 133 S.Ct. at 2157 (emphasis added) (citing *Apprendi*, 530 U.S. at 483, n. 10, 490). Petitioner's indictment stated that he "knowingly used and carried a firearm" in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A). (Indictment, ECF No. 9 at 1-2.) Section 924(c)(1)(A)(ii) provides that "if the firearm is brandished," the defendant must be "sentenced to a term of imprisonment of not less than 7 years." The prosecution version, which Petitioner admitted was true, stated that he "pulled his shirt up, displaying a pistol." (Prosecution Version, ECF No. 30 at 1.) The Court explained to Petitioner in the plea hearing that if it found at sentencing that Petitioner had brandished the weapon, Petitioner would be subject to a mandatory additional term of seven years of imprisonment. (Plea Tr., ECF No. 47 at 10-11.) Petitioner pled guilty knowing that he might receive the additional sentence for brandishing the weapon. "[W]hen a defendant knowingly admits the facts necessary for a sentence enhancement in the context of a plea, simultaneously waiving his Sixth Amendment right to a jury trial, no *Apprendi* problem arises." *United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013). Thus, *Alleyne* would not have been applicable to this case even if it had been retroactively applicable to cases on collateral review.

with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of June, 2015.